**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT M. BOURNE,<br><br>                 Plaintiff,<br><br>         v.<br><br>LANCASTER COUNTY PRISON, TROY WALTZ and VINCENT GUARINI, each in their individual and official capacities,<br><br>                 Defendants. | Civil Action No. 06-0293 |

## THIRD AMENDED COMPLAINT

Plaintiff Robert M. Bourne ("Plaintiff"), by and through his undersigned counsel and pursuant to Federal Rule of Civil Procedure 15(a), brings this Third Amended Complaint against Defendants Lancaster County Prison ("LCP"), Troy Waltz ("Waltz") and Vincent Guarini ("Guarini") (collectively, "Defendants"). In support thereof, Plaintiff avers as follows.

### PARTIES

1.      Plaintiff is an adult individual who is currently incarcerated at SCI Waymart, a correction facility located in Waymart, Pennsylvania.

2.      LCP is a correctional facility located in and operated by the County of Lancaster, Pennsylvania. LCP is an administrative arm or agency of the County of Lancaster that is duly organized, created, incorporated under, and/or formed in accordance with the laws of the Commonwealth of Pennsylvania, and as such is a "person" for purposes of 42 U.S.C. § 1983.

3.      Waltz is an adult individual who, upon information and belief, is a resident and domiciliary of the Commonwealth of Pennsylvania. Waltz was at all relevant times a LCP Correctional Officer.

4.      Guarini is an adult individual who, upon information and belief, is a resident and domiciliary of the Commonwealth of Pennsylvania.  Guarini was at all relevant times the LCP Warden.

5.      At all relevant times, each of the acts of the individual Defendants were taken under the color and pretense of statutes, ordinances, regulations, customs, and usages of the Commonwealth of Pennsylvania, and under the authority of their offices as state officials.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

7.      This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

8.      Each Defendant is subject to the personal jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 4(k) and either 42 Pa. Cons. Stat. Ann. §§ 5301 or 5322 because each Defendant resides in the Commonwealth of Pennsylvania, is located in the Commonwealth of Pennsylvania, has a continuous and systematic part of its general business within the Commonwealth of Pennsylvania, transacts business within the Commonwealth of Pennsylvania, and/or caused harm by acts or omissions that occurred within the Commonwealth of Pennsylvania.

9.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2) because one or more Defendants reside in this district and/or because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## FACTS COMMON TO ALL COUNTS

10.    On or about March 29, 2005, Plaintiff was arrested for an alleged indecent assault and for the alleged corruption of a minor.

11.    Following his arrest, Plaintiff was temporarily incarcerated in LCP.

12.    On or about May 16, 2006, Plaintiff requested medical treatment for issues related to his mental health, specifically the procurement of medication.

13.    Plaintiff was then escorted by Waltz to the LCP infirmary to see Dr. Anthony Russo ("Dr. Russo"), an employee of LCP who was supposed to treat inmates like Plaintiff who were in need of medical attention.

14.    Before Plaintiff was permitted to receive medical treatment from Dr. Russo, however, Waltz requested that Plaintiff sign a medical malpractice waiver ("the malpractice waiver").

15.    Upon information and belief, it was the policy and practice of Waltz and other LCP Correctional Officers to require that inmates sign malpractice waivers as a precondition of receiving medical treatment.

16.    When Plaintiff refused to sign the malpractice waiver, Waltz threatened Plaintiff with bodily harm and demanded that he comply.

17.    When Plaintiff again refused to sign the malpractice waiver, Waltz brutally assaulted him, grabbing him, lifting him into the air, and throwing him to the ground violently.

18.    Plaintiff landed on his back and buttocks and immediately suffered intense physical pain there and elsewhere.

19.    The assault on Plaintiff was witnessed by Dr. Russo.

20.     Upon information and belief, the incident was also recorded electronically by the LCP security system, which videotapes all activity in all LCP common areas, including the infirmary where Plaintiff was assaulted.

21.     Plaintiff suffered serious physical injuries as a result of the assault, including but not limited to bruising, which was photographed by Correctional Officers after the assault.

22.     Plaintiff suffered intense physical pain as a result of the assault for approximately two (2) weeks.

23.     Waltz issued a misconduct to Plaintiff as a result of the incident and then confined him to HABA, or "House Alone, Be Alone," which is LCP's name for disciplinary confinement.

24.     Plaintiff requested a grievance form so that he could challenge the issuance of the misconduct, his confinement in HABA, and/or his being assaulted by Waltz.

25.     Waltz and other LCP Correctional Officers, including but not limited to Correctional Officer Sutton, refused to give Plaintiff a grievance form and denied him access to legal counsel, thereby preventing him from challenging the issuance of the misconduct, his confinement in HABA, and/or his being assaulted by Waltz.

26.     Plaintiff never received a hearing and was never permitted to pursue any administrative remedies in connection with the issuance of the misconduct, his confinement in HABA, and/or his being assaulted by Waltz.

27.     Waltz and other LCP Correctional Officers also denied Waltz access to medical treatment during his confinement in HABA as a result of his refusal to sign a malpractice waiver.

28.     During his confinement in HABA, Plaintiff was confined to a solitary cell for at least twenty-three (23) hours on weekdays and twenty-four hours on weekends. For one (1) hour on weekdays only, Plaintiff was permitted to leave his cell. He was not, however, allowed to engage in outdoor exercise or to communicate with other inmates.

29.     When in general population, Plaintiff was only permitted access to the outdoors in the form of an "urban yard," which consisted of a large indoor room with open windows. Plaintiff had minimal exposure to direct sunlight during his time in the urban yard, and none while he was in HABA.

30.     Plaintiff's confinement in HABA, during which Plaintiff was denied the right to outdoor exercise and free association, lasted for more than one-hundred (100) days.

31.     Prior to this incident, Plaintiff had spent a total of only twenty (20) days in HABA during his confinement at LCP, and no more than ten (10) days consecutively.

32.     As a result of his confinement in HABA, Plaintiff suffered and continues to suffer extreme emotional distress and mental anguish.

33.     Upon information and belief, Waltz was subsequently terminated by the LCP because he suffered from extreme emotional problems and anger management deficiencies that were both well known to and well documented by his superiors, including Guarini.

34.     Upon information and belief, Guarini failed to adequately supervise and/or train Waltz and other LCP Correctional Officers regarding providing medical treatment to inmates, the proper use of force by Correctional Officers on inmates, the proper reasons for and length of confinement in HABA, and cruel and unusual punishment generally.

35.     Plaintiff was subsequently released from LCP and from state custody generally, relieving him of any duty to continue to pursue administrative remedies in connection with the issuance of the misconduct, his confinement in HABA, and/or his being assaulted by Waltz.

36.     Plaintiff was subsequently arrested for an alleged parole violation and is currently incarcerated at SCI Waymart, a correctional facility located in Waymart, Pennsylvania.

## COUNT I
### (Assault – Against Correctional Officer Waltz)

37.     Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 36.

38.     On or about May 16, 2006, Waltz requested that Plaintiff sign a medical malpractice waiver to procure medical treatment and when Plaintiff refused to do so, Waltz brutally assaulted him, grabbing him, lifting him into the air, and throwing him to the ground.

39.     Upon information and belief, Waltz acted  with an unprivileged intent to put Plaintiff in reasonable and immediate apprehension of a harmful or offensive contact and caused such apprehension in Plaintiff.

40.     Waltz's actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages are necessary and appropriate.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Waltz and award Plaintiff the following relief:

(a)     Compensatory, punitive and other damages in an amount to be determined at trial;

(b)     Pre-judgment and post-judgment interest;

(c)     Costs of suit; and

(d)     Such further relief that the Court may deem just and proper.

## COUNT II
### (Battery – Against Correctional Officer Waltz)

41.     Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 40.

- 6 -

42.     On or about May 16, 2006, Waltz requested that Plaintiff sign a medical malpractice waiver to procure medical treatment and when Plaintiff refused to do so, Waltz brutally assaulted him, grabbing him, lifting him into the air, and throwing him to the ground.

43.     Upon information and belief, Waltz acted without privilege or justification, and with excessive force, causing a harmful and offensive contact to Plaintiff's person.

44.     Waltz's actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages are necessary and appropriate.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Waltz and award Plaintiff the following relief:

(a)     Compensatory, punitive and other damages in an amount to be determined at trial;

(b)     Pre-judgment and post-judgment interest;

(c)     Costs of suit; and

(d)     Such further relief that the Court may deem just and proper.

### COUNT III
### (Gross Negligence/Willful Misconduct – Against Correctional Officer Waltz)

45.     Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 44.

46.     Waltz's conduct was unreasonable in character and was made with a reckless disregard of the consequences of those actions.

47.     Waltz's conduct was taken with such a want of care and regard for its consequences as to justify a presumption of willfulness.

48.     Waltz's conduct proximately caused damage to Plaintiff.

- 7 -

49.     Waltz's conduct exceeded the normal standards of decent conduct and was willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages are necessary and appropriate.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Waltz and award Plaintiff the following relief:

    (a)    Compensatory, punitive and other damages in an amount to be determined at trial;

    (b)    Pre-judgment and post-judgment interest;

    (c)    Costs of suit; and

    (d)    Such further relief that the Court may deem just and proper.

**COUNT IV**
**(Intentional Infliction of Emotional Distress – Against Correctional Officer Waltz)**

50.     Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 49.

51.     Waltz's conduct was extreme and outrageous.

52.     Waltz's conduct was intended.

53.     Waltz's conduct caused severe emotional distress.

54.     Waltz's conduct exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages are necessary and appropriate.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Waltz and award Plaintiff the following relief:

    (a)    Compensatory, punitive and other damages in an amount to be determined at trial;

    (b)    Pre-judgment and post-judgment interest;

    (c)    Costs of suit; and

- 8 -

(d)    Such further relief that the Court may deem just and proper.

## COUNT V
**(Negligent Infliction of Emotional Distress – Against Correctional Officer Waltz)**

55.    Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 54.

56.    Waltz's conduct was negligent.

57.    Waltz's conduct resulted in physical injury to Plaintiff.

58.    Waltz's conduct caused Plaintiff to suffer severe emotional distress.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Waltz and award Plaintiff the following relief:

(a)    Compensatory, punitive and other damages in an amount to be determined at trial;

(b)    Pre-judgment and post-judgment interest;

(c)    Costs of suit; and

(d)    Such further relief that the Court may deem just and proper.

## COUNT VI
**(Cruel and Unusual Punishment – Against All Defendants)**

59.    Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 58.

60.    Waltz deliberately assaulted Plaintiff without justification and placed him in disciplinary confinement without access to outdoor exercise or other inmates for an unreasonable period of time.  Such actions amounted to a wanton disregard of Plaintiff's health and safety

61.    LCP and Guarini deliberately subjected Plaintiff to physical assault by Waltz and/or acted recklessly with respect to Plaintiff's risk of being physically assaulted by Waltz. Such actions amounted to a wanton disregard of Plaintiff's health and safety.

62.    Defendants, acting under the color of state law, inflicted cruel and unusual punishment onto Plaintiff by inflicting bodily harm on him and placing him in disciplinary confinement, without access to outdoor exercise or other inmates, for an unreasonable period of time under circumstances of which they were aware, and in which a reasonable person would believe, that harm would result.

63.    By subjecting Plaintiff to this cruel and unusual punishment, the Defendants, acting under color of state law, violated 42 U.S.C. § 1983 by depriving Plaintiff of his rights under the 8th and 14th Amendments to the United States Constitution.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants and award Plaintiff the following relief:

a.    Compensatory, punitive and other damages in an amount to be determined at trial;

b.    A declaration that Defendants' actions violated Plaintiff's federal rights;

c.    Attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988; and

d.    Any further equitable or other relief that the Court may deem just and proper.

## COUNT VII
### (Denial of Access to Outdoor Exercise – Against All Defendants)

64.    Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 63.

65.    Waltz placed Plaintiff in HABA without access to outdoor exercise for a period of over one hundred (100) days.

66.    Defendants deliberately denied Plaintiff access to outdoor exercise during this period and/or acted recklessly with respect to Plaintiff's lack of outdoor exercise.

67.    Even when Plaintiff was in general population, he was denied access to outdoor exercise as he was only allowed into the urban yard, with minimal exposure to sunlight.

68.     Defendants denied Plaintiff his right under 61 P.S. § 101 to at least one hour of outdoor exercise for five days each week by denying Plaintiff access to any outdoor exercise for a period of over one hundred (100) days.

69.     Defendants also denied Plaintiff his right under 61 P.S. § 101 to at least two (2) hours a day of outdoor exercise during his entire time in general population.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants and award Plaintiff the following relief:

a.      Compensatory, punitive and other damages in an amount to be determined at trial;

b.      A declaration that Defendants' actions violated Plaintiff's state and federal rights;

c.      Attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988; and

d.      Any further equitable or other relief that the Court may deem just and proper.

## COUNT VIII
### (Inadequate Training and/or Supervision – Against LCP and Guarini)

70.     Plaintiff incorporates by reference, as though set forth fully herein, the allegations set forth in paragraphs 1 through 69.

71.     LCP is required to adequately train and/or supervise LCP Correctional Officers and make and/or implement policies, procedures and customs regarding the maintenance of prisoner safety, including but not limited to providing medical treatment to inmates, the proper use of force by Correctional Officers on inmates, the proper reasons for and length of confinement in HABA, and cruel and unusual punishment generally.

72.     Upon information and belief, Guarini holds a position of authority in LCP that requires him to adequately train and/or supervise LCP Correctional Officers and make and/or implement policies, procedures and customs regarding the maintenance of prisoner safety, including but not limited to providing medical treatment to inmates, the proper use of force by

Correctional Officers on inmates, the proper reasons for and length of confinement in HABA, and cruel and unusual punishment generally.

73.     The inadequacy and insufficiency of the existing procedures, policies, customs, training and supervision of the correctional officers under the authority of LCP and Guarini was obvious and apparent to a reasonable person.

74.     Upon information and belief, Guarini knew that it was improper for Correctional Officers to require inmates to sign a medical malpractice waiver as a prerequisite to obtaining medical treatment.

75.     Upon information and belief, Guarini knew that Correctional Officers could potentially use an unreasonable amount of force on inmates.

76.     Upon information and belief, Guarini knew that placing an inmate in HABA for a period of over one hundred (100) days without access to outdoor exercise is a violation of both 61 P.S. § 101 and 42 U.S.C. § 1983.

77.     Specifically, Guarini turned a blind eye to the fact that, acquiesced in, or knew or should have known that the Correctional Officers under his authority had been and were being improperly and inadequately trained and supervised with regard to providing medical treatment to inmates, proper use of force on inmates, and proper use of HABA confinement.

78.     Guarini turned a blind eye to, acquiesced in, or knew or should have known of the inadequacy and insufficiency of the existing procedures, policies and customs of the correctional officers under their authority with regard to providing medical treatment to inmates, proper use of force on inmates, and proper use of HABA confinement.

79.     Guarini turned a blind eye to, acquiesced in, or knew or should have known that the existing procedures, policies, customs, training and supervision of correctional officers regarding providing medical treatment to inmates, proper use of force on inmates, and proper use

of HABA confinement, without modification, created an unreasonable risk of harm to inmates such as plaintiff.

80.    Guarini turned a blind eye to, acquiesced in, or knew or should have known that the existing procedures, policies, customs, training and supervision of correctional officers regarding providing medical treatment to inmates, proper use of force on inmates, and proper use of HABA confinement, created an unreasonable risk of harm to inmates such as plaintiff.

81.    Because Guarini failed to address the known, unreasonable risk created by the existing procedures, policies, customs, training and supervision of correctional officers regarding providing medical treatment to inmates, proper use of force on inmates, and proper use of HABA confinement, plaintiff was deprived of his federal rights under the Eighth and Fourteenth Amendments of the United States Constitution as well as his rights under Pennsylvania law by being brutally attacked by Waltz, and then confined to HABA for over one hundred (100) days without access to outdoor exercise.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants LCP and Guarini and award Plaintiff the following relief:

a.    Compensatory, punitive and other damages in an amount to be determined at trial;

b.    A declaration that Defendants violated Plaintiff's federal rights;

c.    Attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988; and

d.    Any further equitable or other relief that the Court may deem just and proper.

- 13 -

Dated: October 24, 2008

Respectfully submitted,

_____

Michael P. Daly (Attorney ID 86103)
Aaron L. Peskin (Attorney ID 206995)
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(215) 988-2700 (tel.)
(215) 988-2757 (fax)

*Attorneys for Plaintiff Robert M. Bourne*

## CERTIFICATE OF SERVICE

I, Aaron Peskin, hereby certify that, on the date set forth below, I caused a true and correct copy of the foregoing Third Amended Complaint to be served via first class mail, postage prepaid, upon the following:

Christine E. Munion
Francis R. Gartner & Associates
10 Sentry Parkway, Suite 301
Blue Bell, PA 19422

*Attorney for Defendants Troy Waltz,*
*Vincent Guarini and Lancaster County Prison*

Dated: October 24, 2008

Aaron L. Peskin